UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| CHARTER FOODS INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 09-06-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION &** |
| DEREK ENGINEERING OF OHIO, INC., ) | **ORDER** |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The plaintiff, Charter Foods, Inc., hired the defendant, Derek Engineering of Ohio, Inc., to excavate a leased lot in South Williamson, Kentucky, and then build a restaurant on the lot. But after the plaintiff found an issue with the adjacent lot during the fourth day of the excavation, the plaintiff discontinued the project because of how much additional money it believed was necessary to complete the project. Subsequently, the plaintiff brought this action against Derek and the subcontractor Derek hired, R & L Paving, for negligence and breach of contract. Derek brought cross claims against R & L Paving for breach of contract and indemnity. The defendants have now both moved for summary judgment. Since questions of fact still remain with respect to the plaintiff's negligence claim against Derek, Derek's motion must be denied in part. The remaining claims in this case must be dismissed since the evidence in the record does not support them.

**BACKGROUND**

Many of the facts in this case are undisputed. The disputed facts are highlighted below:

On August 27, 2004, Charter Foods leased an undeveloped commercial lot in South Williamson, Kentucky from Southside Real Estate Developers ("Southside"). R. 58, Ex. E. Charter Foods planned to construct and operate a Taco Bell restaurant on the lot. *Id.* Before signing the lease, Charter Foods determined the suitability of the site and hired an architecture firm, Form Guild, Inc., to develop site plans. R. 58, Ex. C at 34-35 ("Steele Depo. II"). The site plans included specifications for performing the excavation at issue in this case. *Id.* at 35. In preparing for the development of the site, Charter Foods did not consult any construction experts to verify the site's suitability for the excavation. *Id.* at 138-39. Charter Foods also did not investigate the stability of the adjacent property before leasing the lot. *Id.* at 141.

On March 18, 2005, Charter Foods hired Defendant Derek Engineering of Ohio, Inc., ("Derek") as a general contractor to execute the site plans that Form Guild created. *Id.* at 82-83, 135. Derek had no involvement in the preparation of the site plan. *Id.* at 136-38. Derek was to prepare the site and construct a Taco Bell restaurant. R. 59, Ex. 2 at 6.

On March 30, 2005, Derek hired Defendant R & L Paving, as a subcontractor to prepare the site and to excavate a portion of the hill along the northwestern boundary of the property in order to erect a planned retaining wall. *See* R. 58, Ex. H; Steele Depo. II at 92; R. 58, Ex. F at 23-24 ("Bruin Depo."). R & L Paving was not involved in the development of the site plan or engineering the retaining wall. Steele Depo. II at 216-17.

The parties agree that the work began in April 2005 and that Charter Foods directed Derek to stop all excavation work after four days. Bruin Depo. at 97; Steele Depo. II at 195. The parties do not know the exact dates of when the construction started and stopped. R. 59, Ex. 2 at 4. The parties dispute: when the defendants discovered that the hillside on the adjacent lot was unstable and how much work was done before and after they discovered the instability.

Rory Steele, a project manager for Charter Foods, oversaw this construction project. R. 58, Ex. A at 11 ("Steele Depo. IA"). Steele testified that before the start of excavation Derek hired a surveyor, Allen Coffey, to verify the lot's boundaries. R. 58, Ex. B at 32-33 ("Steele Depo. IB"). Steve Bruin, Derek's site supervisor, testified that Coffey did the inspection in April 2005 *after* some initial excavation was done. Bruin Depo. at 24. Coffey told Bruin that the stakes at the corners of the lot had moved three to four feet from the previous survey before the work started. *Id.* Bruin testified that he spoke with Greg Wolfe, a project manager at Derek, about the survey results. *Id.* at 24-25. Bruin and Wolfe had Coffey come again one to two days later to confirm the results were correct. *Id.* In the meantime, the excavation continued because Wolfe directed Bruin to keep the project going. *Id.* at 25. Steele testified that Coffey or a Derek employee told him the shift was one to two feet. Steele Depo IB at 32-33; Steele Depo. II at 103-04. Steele stated that Wolfe said that he did not think the shift was a big issue. Steele Depo. II at 102. In its supplemental reply, Derek disputes that Wolfe said it was not an issue and that it was safe to proceed. R. 65 at 2. Derek disputes how much Charter Foods relied on any statement from Wolfe. *Id.* at 4-5.

3

As the project continued, Bruin noticed that dirt was "coming off the mountain" on to an adjacent lot with a recently built Subway restaurant. Bruin Depo. at 25. After completion of the third day of work, local people mentioned to Bruin that the Subway lot had issues and there was an abandoned mine on the lot. *Id.* at 94-95. The next morning, Bruin spoke with the owners of the Subway and learned of their problems with the adjacent site. *Id.* at 95. Steele and Bruin then met and looked at where there could be sliding on the hillside. *Id.* at 26, 95. At that point, four days into the work, Steele directed Derek to stop the excavation work. *Id.* at 97; R. 58, Steele Depo. II at 195.

Before hiring Derek, the parties agree that Charter Foods consulted Derek on one aspect of the project. Charter Foods asked the Kentucky Department of Transportation ("DOT") for a right-of-way to get an extra fifteen feet of usable land on the lot. Steele Depo. II at 42-43. DOT declined the plaintiff's request for a right-of-way. *Id.* at 42.

Following the decision, Steele informed Wolfe, the Derek manager, that the project would require more feet because the DOT did not give Charter Foods the right-of-way. *Id.* Steele testified that Wolfe said they could make the site work, even without the right of way. *Id.* Steele and Wolfe discussed how the site still could work. *Id.* The parties dispute the extent of the advice that Wolfe gave Steele during that conversation.

On April 15, 2005, Derek consulted with Alchemy Engineering Associates, Inc., about the problem with the boundary line and the potential for a landslide near the building site. R. 58, Ex. D at 9. Alchemy recommended that Charter Foods take remedial measures to make the

4

site safe, including conducting a geotechnical investigation to determine the severity of the sliding soil problem. *Id.* at 10.

On April 18, 2005, Derek asked the Kentucky Department of Abandoned Mine Lands ("DAML") for state funds to pay for remedial measures to the hillside. Steele Depo. II at 100; R. 58, Ex. D at 3. DAML declined to provide funds because it concluded that the landslide was due to excavation by the Subway lot owner and unusually heavy rainfall—not past mining activity. R. 58, Ex. D at 3-8.

Charter Foods got a second opinion on the sliding soil problem from Howard Engineering. Steele Depo. II at 98, 101; R. 58, Ex. D at 2. On April 21, 2005, Dana Howard met with Bruin of Derek at the site. R. 58, Ex. D at 2. Howard did not recommend construction on the site until some remedial work was done, including building a retaining wall. *Id.*

Ultimately, Charter Foods decided not to build the required retaining wall to protect against the adjacent site. Steele Depo II at 128. Charter Foods concluded that the soil conditions on the adjacent property would put the building at risk. *Id.* at 175. Charter Foods did not direct Derek or R & L Paving to repair or restore the site. *Id.* at 173, 196-97.

After it decided not to construct a Taco Bell on the site, Charter Foods sought release from the lease with Southside Developers. Steele Depo. II at 177-79. Southside believed that Charter Foods had damaged the property, and the lease was still valid. R. 58, Ex. G at 12 ("Moore Depo."). Thus, Southside did not release Charter Foods from the lease. Steele Depo. II at 177-79. Southside maintained that the lot was ready for construction when Charter Foods

5

leased it, but the four days of excavation work decreased the property's value because a costly retaining wall became required. Moore Depo. at 12, 14, 17-18.

On July 11, 2006, Charter Foods filed suit against Southside to cancel the lease. *See* R. 62, Ex. 1. On February 9, 2007, Southside countered for breach of the lease and wrongful abandonment of the site. *See* R. 62, Ex. 2. On January 30, 2008, Charter Foods and Southside settled their claims and Charter Foods agreed to pay Southside $72,500. *See* R. 62, Ex. 3; Steele Depo. II at 124-25.

On July 17, 2008, Charter Foods filed a complaint against Derek in Pike Circuit Court. *See* R. 1. On January 15, 2009, Derek removed the action to federal court. *See id.* On March 28, 2009, Charter Foods filed an amended complaint and added R & L Paving as a defendant. *See* R. 29. Charter Foods alleges that the defendants damaged the lot because they "performed in a negligent, careless and unworkmanlike manner." *Id.* at 2. In addition, Charter alleges the defendants injured its business because it could not run a restaurant on the lot as a result of the defendants' conduct. *Id.* Charter Foods seeks to recover: the amount it paid to fix damage to the lot and all other damages that the defendants' actions caused. *Id.*

On April 3, 2009, Derek filed cross claims against R & L Paving for indemnity and breach of contract. *See* R. 32. Derek alleges that R & L Paving performed all the site grading and excavation. *Id.* at 4. Thus, Derek asserts that R & L Paving should indemnify or reimburse Derek if Charter Foods succeeds in its claims. *Id.* In addition, Derek asserts that if the site preparation work was done in a negligent or in an unworkmanlike manner then R & L Paving breached its contract. *Id.* In the alternative, Derek alleges that if Charter Foods succeeds in

6

showing negligence then Derek should be entitled to apportionment or contribution from R & L Paving. *Id.* at 5.

On September 15, 2009, R & L Paving filed a motion for summary judgment. *See* R. 58. On September 24, 2009, Derek also filed a motion for summary judgment. *See* R. 62. Charter Foods responded to these motions, R. 64, and the defendants filed their replies, R. 66; R. 67. Thus, these motions are ripe for the Court's review.

## DISCUSSION

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Derek and R & L Paving, as the moving parties, "[bear] the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). They may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the Charter Foods' claim. *Id.* at 322-25.

Once the movant meets this burden, the burden shifts and the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Moreover, there must be evidence on which the jury could reasonably find for the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In considering these motions

for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

**A. Derek's Negligence**

Charter Foods alleges that Derek was negligent in preparing the site for the construction of a Taco Bell.[1] There are material questions of fact that must be resolved before determining whether Derek was negligent. Thus, the Court cannot dismiss this claim as a matter of law. There is a question of fact about whether Derek negligently gave Charter Foods advice at the outset of the project that caused Charter Foods to improperly modify its project. Further, there is a question of fact as to when Derek knew of the instability issue and if it negligently continued to work on the lot before notifying Charter Foods. While Derek has facts supporting its position, a jury must resolve these questions of fact to decide whether Derek was indeed negligent.

In any negligence action under Kentucky law, a plaintiff must prove the existence of a duty, breach thereof, causation, and injury. *Boland-Maloney Lumber Co., Inc. v. Burnett*, ___ S.W.3d ___, Nos. 2008-CA-59, 2008-CA-299, 2009 WL 2901206, at *3 (Ky. Ct. App. Sept. 11, 2009) (citations omitted). The existence of a duty is a question of law for the court, while breach and injury are questions of fact for the jury. *Id.* Causation presents a mixed question of law and

---

[1] Charter Food's complaint contains a negligence claim, stating that Derek damaged the property during site preparation because the preparation was "performed in a negligent, careless and unworkmanlike manner." R. 29 at 2. In addition, the complaint contains a breach of contract claim, alleging that Derek's negligent and careless conduct was a breach of the parties' contract. R. 29, Ex. 1 at 3. Derek conflates these two causes of action and states that the plaintiff asserted a cause of action for "negligent breach of contract." R. 62 at 2. The Court will presume that Derek is asserting that it was neither negligent nor did it breach its contract with the plaintiff.

8

fact. *Id.* While this Court can resolve whether Derek owed Charter Foods a duty, the remaining elements of the negligence claim should go to a jury since they involve questions of fact that cannot be decided as a matter of law.

### 1. Duty

Derek's duty of care to Charter Foods can be established, even though Charter Foods failed to provide expert testimony. In fact, Charter Foods missed its opportunity to present any expert testimony since it failed to file expert reports in a timely fashion. *See* R. 53. While generally expert testimony is required in cases involving professionals or professions requiring special skill and expertise, the duty here is not so complicated that an expert is required for a layperson to recognize it. *See Burnett*, 2009 WL 2901206, at *4 (finding that an expert is not required in a stairway construction case). Derek was simply hired to prepare the site and then build a Taco Bell restaurant. As a general contractor, Derek clearly owed a duty to Charter Foods. *Id.* at *3 (holding that a contractor owed a standard of care during construction). At a minimum, Derek had a duty to prevent foreseeable damage to the property. *Id.* ("[t]he risk reasonably to be perceived defines the duty to be obeyed[.]" (quoting *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99, 100 (N.Y. 1928))).

Further, Derek does not argue that the duty is so complicated that expert testimony is required for the Court to resolve its duty. Derek merely points out that Charter Foods did not file expert reports. In any case, this fact is irrelevant since it is clear, as a matter of law, that Derek had a duty to prevent foreseeable damage to the Southside property.

## 2. Breach of Duty

The evidence in this case is not so clear that the Court can decide as a matter of law whether Derek breached its duty to the plaintiff. *See Burnett*, 2009 WL 2901206, at * 4. Derek has evidence that its work was all in accordance with the site plan. Steele Depo. II at 110; Bruin Depo. at 46, 55-56, 111. That fact suggests that Derek did not breach its duty to Charter Foods to prevent foreseeable damage to the property. However, there are two facts, which Charter Foods points out in response, that suggest Derek did breach its duty. First, Derek may have let the excavation continue even after it first learned that a corner pin, a pin marking the corner of the lot, had shifted. Bruin Depo. at 24-25. Further, Derek advised Charter Foods that it did not think the issue with the pin would likely be a problem. Steele Depo. II at 102. Though Derek disputes how much work was done and how much advice Derek gave to the plaintiff when it learned that the pin had shifted, a reasonable jury could conclude that there is enough evidence that Derek should not have continued the excavation work. The facts surrounding the corner pin that moved, viewed in the light most favorable to Charter Foods, create a question of fact for a jury to decide.

Additionally, Derek may have led Charter Foods to believe that the restaurant could be built at that site even though DOT denied Charter Foods a right of way. Steele Depo. II at 42. Derek disputes how much advice Wolfe, a Derek supervisor, gave Steele, a Charter Foods supervisor. Still, Derek did give some advice, and Derek may have breached its duty if the advice was improper. A jury must now decide whether Derek breached its duty to Charter Foods because of the advice it gave.

### 3. Causation

There are material questions of fact that must be resolved before deciding whether Derek caused the alleged injury to Charter Foods. One material question of fact is whether the advice that Derek allegedly gave Charter Foods at the outset of the excavation caused the damage to the property. A jury could reasonably conclude that Derek's advice at the outset persuaded Charter Foods to modify the site plan and incorrectly reassured Charter Foods that the modified site plan could be executed without issue. Further, there is the question of whether Derek knew of the slippage issue but continued with the project and, thereby, caused the damage to the property. On this question, a jury could similarly decide in Charter Foods' favor and find that Derek could have—and should have—prevented the damage to the property by stopping work at the first sign of a slippage.

Because of these questions of fact, a jury could draw different, reasonable conclusions about whether Charter Foods satisfied the legal causation element of its negligence claim. In such a situation, causation cannot be decided as a matter of law. *See McCoy v. Carter*, 323 S.W.2d 210, 215 (Ky. 1959) (stating that legal causation can be decided as a matter of law when "there is no dispute about the essential facts and [only] one conclusion may reasonably be drawn from the evidence.").

Undoubtedly, Derek has some strong facts in its favor showing that someone or something else caused the alleged injury to Charter Foods. For example, Derek points out that Charter Foods failed to investigate the stability of the adjacent site, and thus, the faulty site plan caused the damage. Steele Depo. II at 141. Morever, Derek contends that it was merely hired

11

to execute the site plan and not assess the stability of the adjacent property. DAML's review of the property also suggests that the adjacent property owner and unusually large rainfall damaged the property—not the work of Derek. R. 58, Ex. D at 3-8. But, as stated above, there are factual questions that could lead a reasonable juror to conclude that Derek did cause injury to Charter Food. *Burnett*, 2009 WL 2901206, at *4 ("[causation] was for the jury, and there was more than enough evidence for the issue to go to the jury" (citations omitted)). And, at this stage, the Court must view the facts in the light most favorable to Charter Foods. Thus, causation cannot be resolved as a matter of law.

Derek also contends that Charter Foods cannot recover lost profits because Charter Foods did not mitigate its damages. R. 62 at 26-27. Derek states that Charter Foods waited too long to open a Taco Bell at a different location, and thus, Charter Foods—not Derek—caused the lost profits. Derek points to testimony of Steele that shows he did not know why Charter Foods waited to open a Taco Bell at a different location. However, Steele's testimony reveals that material questions of fact remain in this case. There is evidence that some of the delay occurred because Charter Foods requested funds from DAML to account for the instability in the adjacent property as well as consulted with engineering firms like Alchemy and Howard to understand the problem. A jury could see these as efforts to mitigate damages and find a solution to the instability issue. In addition, the pending litigation with Southside may have been a factor in the decision to wait to build a Taco Bell at a different location. A jury could also interpret this as an effort to mitigate damages since Charter Foods was cancelling the lease as soon as it

12

determined that it could not afford to build the Taco Bell there. Thus, there is evidence for a jury to reasonably conclude that Charter Foods did mitigate its damages.

Derek makes several arguments that do not affect the Court's decision on the motion for summary judgment. For instance, Derek argues that it did not cause the alleged damage because Charter Foods decided to stop the work for business reasons. R. 62 at 15-19. Charter Foods does not dispute the fact that it decided to stop the work because it would not have been cost-effective to build the necessary retaining wall. But this does not remove the question about whether Derek's decisions and advice caused damage. Notwithstanding Charter Foods' decision to stop the project, it is still reasonable to conclude that Derek caused damage to the property.

Charter Food admits that it would not have leased the land if it had known about issues with the adjacent property. R. 64 at 4. This indeed suggests that Charter Foods was not diligent when it selected the lot and that lack of diligence caused the plaintiff's damages. However, this admission does not affect the result at the summary judgment stage. There are still facts that show Derek may have caused damage with its advice at the outset and by continuing work after discovering the slippage issue. The fact that Charter Foods would not have leased the land if it knew of the issue is a fact that a jury can take into account when it resolves the factual question of causation in this case.

### 4. Injury

Though Derek presents evidence that Charter Foods was not injured, Charter Foods presents sufficient evidence in response to create a genuine issue of fact about whether there was an injury. Specifically, Charter Foods points out that Southside believed the excavation

damaged the property. Moore Depo. at 38. Thus, there is evidence that Charter Foods, as a tenant of the property, was injured and did not simply rent damaged property.[2]

Derek contends that the property was damaged before the excavation. Derek assumes that no restaurant could be built on the site without accounting for the lack of stability in the adjacent property. Derek does have some supportive evidence like the DAML review, which suggested that the property was damaged before the excavation work. However, Southside did believe the property was ready for a restaurant before the excavation work was done. Moore Depo. at 12, 14, 17-18. Thus, there is question of fact whether Charter Foods was injured or simply had rented damaged property. This question cannot be resolved as a matter of law and must go to the jury. *See Burnett*, 2009 WL 2901206, at *3 (citation omitted) (stating that injury is a question of fact for the jury).

In passing, Derek argues that Charter Foods should have amended its claims and supplemented its disclosures and discovery responses to contain the allegation that Derek's decision to continue the work was negligent. R. 62 at 19-20. Derek does not state specifically what was lacking in Charter Foods' pleadings and instead makes this argument in a conclusory fashion. More importantly, the evidence in the record does not support Derek's argument. Charter Foods gave interrogatory responses in February 2009, asserting that Derek's decisions during the excavation caused the alleged damage. *See* R. 59, Ex. 2 at 5. Those responses are sufficient to put Derek on notice of the plaintiff's alleged theory of negligence. Moreover, if

---

[2] The damages that Charter Foods seeks include: the settlement fee with Southside, lost profits, and expenses for preparing the site for the construction and eventual operation of the Taco Bell. R. 59, Ex. 2 at 10-11.

14

Derek thought the discovery responses were insufficient, it could have moved the Court to assist in resolving the issue. Derek did not. Additionally, on the face of the claims in the complaint, there is no indication that Charter Foods failed to adequately allege its claims against Derek.

Derek argues that Charter Foods cannot recover damages for what it paid in its settlement with Southside since it was a voluntary agreement.[3] Kentucky courts have rejected arguments like Derek's that a voluntary settlement cannot be a basis of recovery in tort. In these situations, the courts have stated that "one who has voluntarily paid a claim is not required to show that he *was* legally compelled to pay the claim, but that he *could have been* compelled at law to pay it." *Commonwealth of KY Transp. Cabinet Dept. of Highways v. Arrow Truck Lines and Transp. Indem. Co.,* 713 S.W.2d 1, 4 (Ky. Ct. App. 1986) (citing *Ashland Oil & Refining Co. v. General Telephone Co.*, 462 S.W.2d 190, 193 (Ky. 1970)). Derek misinterprets *Ashland* to say that Charter Foods was required to show that Southside must have compelled Charter Foods to pay for the claim. But to recover, Charter Foods only needs to show that it was legally liable to Southside, and that Southside *could* have compelled Charter Foods to pay for the damages. *Ashland*, 462 S.W.2d at 193.

---

[3] Derek believes that Charter Foods is bringing a common law indemnity claim since Charter Foods seeks to recover the amount it paid to Southside in a settlement. R. 62 at 27-30. But the second amended complaint, which incorporates the original and first amended complaints, does not on its face contain any such claim. *See* R. 29. Charter Foods does seek to recover what it paid in the settlement but as compensatory damages in its negligence and contract claims—not via an indemnity claim. *See id.* Thus, Derek is incorrect. Charter Foods merely asserts a negligence and breach of contract claim against Derek.

15

In the present case, there is evidence that Charter Foods was legally liable to Southside and that Charter Foods could have been compelled at law to pay the claims of Southside. Specifically, Southside stated that Charter Foods damaged the property with the excavation. Moore Depo. at 12, 38. Even if Charter Foods had completed the term of its lease, Southside would have a claim against Charter Foods for the excavation work since it allegedly damaged the property. At most, Derek again showed there is a question of fact about whether Derek's actions or the plaintiff's decision to abandon the site caused Charter Foods to be liable to Southside. These are precisely the types of questions that a jury must decide. If the jury finds that Derek's excavation work damaged the property, Charter Foods, as a tenant, would be liable and Southside could have compelled Charter Foods to pay for that damage.

The fact that Charter Foods did not admit liability as part of its settlement with Southside does not prevent recovery of the settlement amount. *See* R. 62, Ex. 3. Derek cites no Kentucky law which requires that the settlement agreement contain an admission of liability.

Derek also asserts that Charter Foods needed to reveal how it came to the amount for the settlement. R. 62 at 30-31. Again, Derek is bringing discovery disputes into its motion for summary judgment. Derek had the opportunity to move for the Court's assistance in getting more informative responses from Charter Foods. Derek chose not to do so. However, for this summary judgment motion, Derek needed to show that Southside had no claim against Charter Foods. Derek did not meet this burden. Instead, the evidence shows that Southside, in part, felt there was damage from the excavation, and there is reasonable evidence that Derek's actions may have been a cause of the damage.

Ultimately, if Derek is found liable for negligence, a jury will need to determine the factual question of how much in compensatory damages Charter Foods is owed and whether any or all of the settlement paid to Southside should be part of those compensatory damages.

## B. Derek's Breach of Contract

Derek contends that Charter Foods abandoned a claim to recover the amount it paid Derek for performance of the contract. *See* R. 62 at 32 n. 13. Charter Foods did not respond to this contention so Derek may be right. However, there is no evidence cited in the record that shows Charter Foods abandoned its contract claim against Derek. Derek cites a deposition transcript to show abandonment but fails to provide a pin cite. *See Celotex*, 477 U.S. at 323 (stating that the movant has "the initial responsibility of informing the district court of the basis for its motion"). Additionally, Charter Foods' second amended complaint explicitly incorporated previous complaints that contained a contract claim. *See* R. 29. As a result, the Court will presume that the plaintiff is still pursuing its contract claim.

That said, based on the evidence the parties cited in their briefs, the contract claim must now be dismissed. Derek brought forth evidence that its work was consistent with the parties' contract. R. 62 at 11-13. The parties agree that: the contract was verbal, Derek was to prepare the site, and then Derek was to construct a Taco Bell restaurant. R. 59, Ex. 2 at 6. Steele, designated to speak on behalf of Charter Foods, admitted that the excavation was done in accordance with the site plan. Steele Depo. II at 149, 166. This evidence shows that Derek did *not* breach the contract.

17

In response, Charter Foods did not show there was a genuine issue for trial on its contract claim. *See* Fed. R. Civ. P. 56(e). Instead, Charter Foods conceded that all of the excavation work was done in accordance with the site plan, had no errors, and was not of poor workmanship. R. 64 at 2. This concession, along with the fact that Charter Foods did not cite evidence of how the terms of the verbal contract were breached, makes clear that there is no genuine issue remaining for trial. Charter Foods did not present evidence to show that the negligence it alleges was also a breach of the verbal contract. Thus, Derek's motion must be granted with respect to Charter Foods' contract claim.

## C.  R & L Paving's Negligence

Charter Foods also asserted its negligence claim against R & L Paving. R & L Paving brought forth evidence that its excavation work on the Southside lot was done in accordance with the site plan, had no errors, and was not of poor workmanship. Steele Depo. II at 110; Bruin Depo. at 46, 55-56, 111. In response, Charter Foods cited no evidence to rebut R & L Paving's evidence. Charter Foods could have presented evidence that R & L Paving breached its duty to Charter Foods and Derek or that R & L Paving caused the alleged damage. They did not and thus failed to show that a reasonable jury could find for them. *See Anderson*, 477 U.S. at 252**.** All the facts that Charter Foods brings forward to show negligence involve the actions or statements of Derek employees. None of the alleged negligent conduct involves R & L Paving employees. In fact, there are no depositions of R & L Paving employees in the record. Thus, Charter Foods' negligence claim against R & L Paving must be dismissed.

In its brief, Derek also states that in the event there is any negligence found, R & L Paving, not Derek, should be held liable. R. 62 at 13-15. While it is undisputed that R & L Paving performed the excavation work, Charter Foods does not argue that the work itself was done negligently. Rather, Charter Foods argues that Derek's decisions and advice were negligent. In this case, it is immaterial that R & L Paving did the actual excavation work since that is not the basis of Charter Foods' negligence claim. For R & L Paving to remain part of the negligence claim, Charter Foods or Derek needed to show R & L Paving's involvement in the decisions and advice that Charter Foods claims were negligent. Neither Charter Foods nor Derek made such a showing.

**D. R & L Paving's Breach of Contract and Indemnity**

Derek also asserted two cross-claims against R & L Paving for breach of contract and indemnity. *See* R. 32. R & L Paving asserted that it did not breach its contract because the work was performed in a workmanlike manner and thus, as a matter of law, was in accordance with the contract. *See Shreve v. Biggerstaff*, 777 S.W.2d 616, 617 (Ky. Ct. App. 1989). In response, Derek has not cited a single fact showing that R & L Paving breached its contract. Under the terms of the contract, R & L Paving was only obligated to indemnify Derek if R & L Paving caused negligent acts or omissions. R. 58, Ex. H, ¶ 7. As mentioned earlier, there are no facts that show R & L Paving acted negligently. Consequently, Derek's cross-claims must also be dismissed.

## CONCLUSION

Given that genuine issues for trial remain in Charter Foods' negligence claim against Derek, Derek's motion will be denied with respect to that claim. The remaining claims do not contain any genuine issues for trial and, thus, will be dismissed.

Accordingly, it is **ORDERED** as follows:

(1) Derek's motion for summary judgment, R. 62, is **GRANTED IN PART** and **DENIED IN PART**. Derek's motion with respect to Charter Foods' contract claim is **GRANTED**. Thus, the contract claim is **DISMISSED WITH PREJUDICE**. The remainder of Derek's motion is **DENIED**.

(2) R & L Paving's motion for summary judgment, R. 58, is **GRANTED**. Charter Foods' and Derek's claims against R & L Paving are **DISMISSED WITH PREJUDICE**. R & L Paving is **TERMINATED** as a party to this litigation.

This the 11th day of December, 2009.

Signed By:
*Amul R. Thapar* AT
United States District Judge